## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ALFRED JONES**                                      **CIVIL ACTION**

**VERSUS**                                            **NO.  18-2656**

**DARREL VANNOY, WARDEN**                             **SECTION "A"(2)**

### REPORT AND RECOMMENDATION

        This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Alfred Jones, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On April 19, 2007, Jones was charged by bill of information in Orleans Parish with two counts of first degree murder in violation of La. Rev. Stat. § 14:30.[3]  The Louisiana Fourth Circuit Court of Appeal summarized the facts determined at trial as follows in relevant part:

> It is undisputed that on February 15, 2007, Mr. Jones shot and killed the Brooks Brothers.  The issue at trial was whether he did so in self-defense.  The crime scene was a vehicle driven by Darryl Kiefer; the Brooks Brothers were passengers in the vehicle.  The vehicle was parked in the 1000 block of Kentucky Street in New Orleans.  Immediately before the shootings, Mr. Kiefer gave Mr. Jones a ride to his girlfriend's house.  After he exited the vehicle, Mr. Jones shot all three occupants. The Brooks Brothers both died at the scene; Mr. Kiefer survived.
>
> All three occupants of the vehicle—Mr. Kiefer and the Brooks Brothers—had Young Fellows tattoos.  Mr. Campbell, who was murdered in January 2007, likewise had a Young Fellows tattoo.  The gun used to shoot the occupants of the vehicle was the same gun that was used to shoot Mr. Campbell. The trial court, as noted, granted the State's Prieur motion to introduce evidence of Mr. Campbell's murder at trial in this case.[2]
>
> [2]As discussed elsewhere, Mr. Jones' sole assignment of error relates to the introduction of the evidence regarding Mr. Campbell's murder.
>
> At trial, the State called the following ten witnesses: 1) Darryl Kiefer, 2) Giselle Roussell, 3) Benja Johnson, 4) Tarez Cook, 5) Ed Delery, 6) Regina Williams, 7) Lucinda Barnes, 8) Harold Wischan, 9) Kenneth Leery, and 10) Dr. Paul McGarry.
>
> *1) Darryl Kiefer*
>
> Darryl Kiefer was the driver of the vehicle and the surviving victim.  He grew up with the two deceased victims, the Brooks Brothers, in the Treme area of New Orleans.  After graduating from J.F. Kennedy High School ("Kennedy") in 2005, he went to Belen College in Texas on a basketball scholarship. He only

---

[2]Rec. Doc. No. 4.

[3]St. Rec. Vol. 4 of 10, Bill of Information, 4/19/07.

attended college there for one year.  In August 2006, he returned to New Orleans and attended SUNO.  In November or December 2006, he dropped out of school. In the fall of 2006, he worked for Maximum Staffing Temporary Service and began selling marijuana.

Mr. Kiefer stored the money he earned and the money Louis Daniels—a drug dealer—earned at his house.  He was friends with Mr. Daniels and knew him from junior high school.  He also played basketball with him. Mr. Kiefer met the defendant, Mr. Jones, through Mr. Daniels.  Mr. Kiefer was neither a friend of Mr. Jones, nor in business with him.

In December 2006, the money Mr. Kiefer stored at his house—his and Mr. Daniels' money—was stolen.  On the day it occurred, the Brooks Brothers, Hillary Campbell, and "Pookie" (a friend) met Mr. Kiefer at his house before going to play basketball.  The Brooks Brothers and "Pookie" accompanied Mr. Kiefer to play basketball, but Mr. Campbell took the bus home instead.  When Mr. Kiefer returned home from playing basketball, he discovered that the money was missing.  He called Mr. Daniels and asked him if he had taken the money. Mr. Daniels denied doing so and came to Mr. Kiefer's house.  Mr. Daniels questioned Mr. Kiefer regarding what had occurred.  According to Mr. Kiefer, Mr. Daniels told him "Don't worry about it, it's going to come up"; and Mr. Daniels never discussed the incident with him again.

On the day of the shootings (February 15, 2007), Mr. Kiefer began his day in Thibodaux; and he went with his dad to therapy.  After therapy, his dad dropped him off at the Brooks Brothers' house because his car was parked near their house.  Later that day, Mr. Kiefer and the Brooks Brothers drove to "Tattoo Man's" house in the Ninth Ward. After leaving "Tattoo Man's" house, the trio drove through the Ninth Ward to say hello to Mr. Daniels.  The people who were hanging out there told them that Mr. Daniels was not there.  Mr. Jones was there, and he asked Mr. Kiefer for a ride to his girlfriend's house, which was located about five minutes away.  Mr. Jones got into the back passenger seat of Mr. Kiefer's vehicle and gave Mr. Kiefer directions to his girlfriend's house.  Ivan Brooks was in the front passenger seat; Damon Brooks was in the back seat behind the driver, Mr. Kiefer.

When they arrived at Mr. Jones' girlfriend's house, Mr. Jones exited the vehicle and stated: "Be cool."  Mr. Jones then pulled out a gun and shot at Mr. Kiefer and the Brooks Brothers.  Mr. Jones shot Damon Brooks first. Mr. Kiefer was shot ten times; he was shot in the arm, leg, hands, and chest.  After Mr. Jones fled, Mr. Kiefer called 911.  Mr. Kiefer saw a woman coming out of a house and called out to her for help.  When she failed to respond, he drove the vehicle forward to the front of the woman's house.  The woman ran inside stating that she was going to call the police.  Shortly thereafter, the police arrived.

Mr. Kiefer acknowledged that in 2009 he pled guilty to possession with intent to distribute marijuana and was sentenced to five years of probation.  When

he was arrested for the marijuana violation, there was a gun in the car in which he was riding. He also acknowledged that in July 2010 he was arrested for possession of ecstasy; he testified that there had been no discussions with the State about this open charge. Mr. Kiefer denied having a gun in his car on the date of the shootings (February 15, 2007).

Mr. Kiefer also denied murdering Mr. Campbell or having anything to do with Mr. Campbell's murder. Indeed, he testified that he found out about Mr. Campbell's murder (which occurred in January 2007) by reading about it in the newspaper. He also found out from the newspaper that Mr. Campbell had a Young Fellows tattoo. Mr. Kiefer testified that Young Fellows was a basketball team, not a gang. (As noted elsewhere, Mr. Kiefer, the Brooks Brothers, and Mr. Campbell all had Young Fellows tattoos.) Mr. Kiefer testified that the Brooks Brothers were not hustlers; they were not involved in anything illegal. On the other hand, Mr. Kiefer acknowledged that Mr. Daniels was a hustler and a drug dealer.

*2) Giselle Roussell*

Giselle Roussell, an assistant police communications supervisor, identified the tape of the 911 call received on the date of the murders.

*3) Benja Johnson*

Officer Benja Johnson of the New Orleans Police Department ("NOPD") testified that he was one of the officers who first responded to the call reporting the shootings. When he arrived on the scene, Officer Johnson observed a white vehicle parked in the street with the passenger door open. When he approached the vehicle, Officer Johnson observed that all three of its occupants had been shot. Officer Johnson notified EMS and attempted to speak to the driver of the vehicle. The driver indicated that "Alfred" had shot them. The other two occupants, one in the front passenger seat and one in the back seat, had expired on the scene. Officer Johnson cordoned off the scene until the crime lab technicians arrived.

*4) Tarez Cook*

Tarez Cook, a NOPD crime lab technician, was called to process the crime scene. Ms. Cook photographed the scene, collected the evidence found at the scene, and prepared a crime scene report. Another crime scene technician prepared a sketch of the scene, which Ms. Cook identified. Ms. Cook also identified the photographs taken at the scene. No firearms were found on the victims or at the scene. Spent bullet casings were collected.

*5) Ed Delery*

Ed Delery, an expert in the field of latent print development and a member of the crime lab, processed the vehicle. Mr. Delery took photographs of the vehicle, searched it for evidence, and processed it for latent prints. Nineteen latent prints were found on the exterior of the vehicle, and two latent prints were found in the interior of the vehicle.

*6) Regina Williams*

Detective Regina Williams, who participated in the homicide investigation, testified that she was sent to check on the victim, Mr. Kiefer, who was transported to Elmwood Medical Center ("Elmwood"). When Detective Williams arrived at Elmwood, Mr. Kiefer was being prepared for surgery. She spoke with Mr. Kiefer and the physicians treating him. Mr. Kiefer told her that "Alfred" shot him, that he knew Alfred from the Gallier Street area, and that he did not know Alfred's last name. Mr. Kiefer also told him that he gave Alfred a ride to his girlfriend's house, and when Alfred exited the vehicle he shot all three occupants. Mr. Kiefer described Alfred as dark-skinned, slender, tall, and having dread locks. Detective Williams recovered a spent bullet that fell out of Mr. Kiefer's clothes during preparation for surgery. Detective Williams relayed all the information she obtained to Detective Lucinda Barnes.

*7) Lucinda Barnes*

Detective Lucinda Barnes testified that she was the chief homicide investigator in this case. When she arrived on the scene, she learned that two victims were fatally shot and another victim was shot and transported to Elmwood. Detective Barnes spoke with the first responding officers; they advised her that the homicides occurred in the white vehicle that was on the scene. Detective Barnes observed spent casings near the residence at 1003 Kentucky Street; the vehicle came to rest at 1035 Kentucky Street.

The day after the shootings Detective Barnes met with the surviving victim, Mr. Kiefer, at Elmwood. Mr. Kiefer told Detective Barnes that "Alfred" shot him. Detective Barnes then put together a photographic lineup and showed it to Mr. Kiefer. Mr. Kiefer identified Mr. Jones as the person who shot him and the Brooks Brothers. Mr. Kiefer also gave a statement to Detective Barnes about the shooting. Detective Barnes then obtained a warrant to arrest Mr. Jones for the first degree murders of the Brooks Brothers.

Detective Barnes also investigated Mr. Kiefer's background. She discovered that Mr. Kiefer was a member of the Young Fellows. (As noted, Mr. Kiefer claimed Young Fellows was a basketball group, not a gang.) At that time (February 2007), Mr. Kiefer had no criminal record. Nor did either of the Brooks Brothers have a criminal record. No weapons were found on the victims or in the vehicle.

*8) Harold Wischan*

On January 3, 2007, NOPD Detective Harold Wischan was notified by Louisiana National Guardsmen, who were patrolling in the area of Press Drive, that they found the body of young man in a grassy area near some abandoned houses. (This area was devastated in August 2005 by Hurricane Katrina.) The victim was identified as Mr. Campbell. Eleven spent nine millimeter shell casings were found near the body. The victim had two five dollar bills and a plastic bag containing crack cocaine. The victim also had tattoos (one on each arm) identifying him as a member of the Young Fellows. Subsequently, Detective

Wischan was contacted by Detective Barnes, who indicated that the spent casings found at his crime scene might match the spent casings found at the scene of the Brooks Brothers' murders.

*9) Kenneth Leary*

Kenneth Leary, an expert in firearms examination, testified that he examined the casings and bullets from both the Brooks Brothers' murders and Mr. Campbell's murder and determined that the casings and bullets were fired from the same weapon.

*10) Dr. Paul McGarry*

Dr. Paul McGarry, a forensic pathologist, performed the autopsies on Mr. Campbell and the Brooks Brothers. Briefly, his findings as to each autopsy were as follows:

- **Hillary Campbell**: Mr. Campbell suffered eight gunshot wounds; six were in the back of the head, one went through the right shoulder, and one went into the right hip. Dr. McGarry recovered bullet fragments from the head and a whole bullet from the right hip.

- **Ivan Brooks**: Ivan Brooks suffered three gunshot wounds. One gunshot wound was to the top of the head; the bullet went downward and backward to the base of the brain. Another gunshot wound was to the back of the head about level to the victim's ear; the bullet went into the head, hit the skull and went downward into the neck. The third gunshot wound was to the right upper back. The bullet went into the spine, damaging the spinal cord. Dr. McGarry found all three bullets in the victim's body. Dr. McGarry opined that the brain injury was the fatal shot and that death would have occurred within minutes. Dr. McGarry further opined that the bullet wounds indicated that the victim was shot at close range. The wounds on the head and neck had stippling around them. He concluded that Ivan Brooks' death was a homicide.

- **Damon Brooks**: Damon Brooks was also shot at close range, and he suffered two gunshot wounds to his head. Dr. McGarry testified that both of Damon Brooks's gunshot wounds had stippling around them. One bullet went downward through the brain to the base of the skull. The second bullet entered the neck and ended in the upper left back. Dr. McGarry found both bullets in the victim's body. Dr. McGarry stated that the brain injury was fatal, and the victim would have died within minutes. He noted that the weapon would have been aimed in the direction of the victim's right side. Dr. McGarry also stated that both wounds were in a downward angle. Dr. McGarry concluded that Damon Brooks' death was a homicide.

At trial, the defense called two witnesses: (I) Binatas Norman, and (ii) the defendant, Mr. Jones.

*(I) Binatas Norman*

Binatas Norman is the person that Mr. Jones was going to visit when Mr. Kiefer gave him a ride on the day of the shootings (February 15, 2007). Ms. Norman testified that Mr. Jones is the father of her son. She testified that in February 2007 she lived one block from the crime scene, the 1000 block of Kentucky Street.

*(ii) Alfred Jones*

Alfred Jones testified on his own behalf. He grew up in the Ninth Ward. He, like Mr. Kiefer, attended Kennedy, but he graduated from Douglass High School. He stated that Mr. Daniels and Mr. Kiefer played basketball together in school. Mr. Jones further stated that he, Mr. Kiefer, and Mr. Daniels were drug dealers. He knew that Mr. Daniels kept his money at Mr. Kiefer's house. The money was kept in a cabinet that had a lock on it, and only Mr. Kiefer and Mr. Daniels had keys to the lock. One or two weeks before Christmas 2006, Mr. Kiefer contacted Mr. Daniels and told him that the money had been stolen. Mr. Jones was with Mr. Daniels when Mr. Kiefer contacted him by phone. Mr. Jones accompanied Mr. Daniels to Mr. Kiefer's house. The back door to the house was off its hinges, and the cabinet was broken open. Mr. Kiefer told them that earlier that day the Brooks Brothers and Mr. Campbell were at his house. Mr. Kiefer and the Brooks Brothers went to play basketball; Mr. Campbell went home. Mr. Kiefer discovered the money had been stolen when he returned from playing basketball.

After Mr. Jones and Mr. Daniels went to Mr. Kiefer's house and Mr. Kiefer told them what happened, all three of them went to Mr. Campbell's house. When they arrived, Mr. Kiefer went into the house by himself. He came out and told them that Mr. Campbell was not there. Mr. Kiefer then took Mr. Daniels and Mr. Jones home. Mr. Jones stated that Mr. Daniels thought that Mr. Kiefer had stolen the money because Mr. Kiefer had new rims on his car and was wearing a new gold chain. Mr. Daniels called Mr. Kiefer and told Mr. Kiefer that Mr. Jones had seen him with the new rims and gold chain. Mr. Jones stated that he did not know Mr. Campbell.

Mr. Jones further testified that he did not see Mr. Kiefer again until the day of the shootings, February 15, 2007. On that day, Mr. Kiefer was driving down Gallier Street and was stopped at a stop sign. Mr. Kiefer asked Mr. Jones if he had seen Mr. Daniels. Mr. Jones replied that he had not seen Mr. Daniels, but asked Mr. Kiefer for a ride to his girlfriend's house. Mr. Jones got into the vehicle and gave Mr. Kiefer directions to the house. When they arrived at the house, Mr. Kiefer told Mr. Jones about the call he got from Mr. Daniels about the rims and chain. Mr. Kiefer asked Mr. Jones if he was saying that Mr. Kiefer stole the money. Mr. Jones said no. Mr. Kiefer then pulled out a gun and threatened

to kill him.  Mr. Jones reached for the gun and took it out of Mr. Kiefer's hand. Mr. Jones then fell out of the car.  The man in the back seat attempted to wrestle the gun away from him, and Mr. Jones shot him as Mr. Jones was falling out of the car.  Mr. Jones stated that he did not know how many times he shot the weapon.  He heard Mr. Kiefer and the two men (the Brooks Brothers) yelling to "get him, kill him."  After the shooting, he just ran.  Three days later, Mr. Jones turned himself in after retaining an attorney.  He denied any involvement in Mr. Campbell's murder.

On re-direct, the State called one witness: Donald Hancock.

*Donald Hancock*

Donald Hancock, the telephone supervisor for the Orleans Parish Sheriff's Office, testified that his job is to monitor phone calls in the prison complex.  All phone calls made by inmates are recorded and maintained.  Mr. Hancock identified a CD recording of the phone calls made by Mr. Jones.  Portions of these phone calls were played during the trial.  The phone calls were between Mr. Jones and his mother, and Mr. Jones and a male friend, concerned whether they could get Mr. Campbell's sister to testify that she believed that Mr. Jones was not involved in Mr. Campbell's murder.

State v. Jones, No. 2011-KA-0409, 85 So. 3d 224, 225-230 (La. App. 4th Cir. February 15, 2012); State Record Volume 5 of 10, Louisiana Fourth Circuit Court of Appeal Opinion, 2011-KA-0409, pages 2-12, February 15, 2012.

Jones was tried before a jury on August 2-5, 10-12 and 16-18, 2010, and was found guilty of both counts.[4]  He was sentenced on September 10, 2010, to life in prison without benefit of parole, probation or suspension of sentence.[5]

---

[4]St. Rec. Vol. 2 of 10, Verdict, 8/18/10; St. Rec. Vol. 6 of 10, Trial Transcript, 8/16/10; St. Rec. Vol. 7 of 10, Trial Transcript, 8/17/10; St. Rec. Vol. 8 of 10, Trial Transcript, 8/18/10.

[5]St. Rec. Vol. 1 of 10, Sentencing Minutes, 9/10/10; St. Rec. Vol. 8 of 10, Sentencing Transcript, 9/10/10.

Jones filed a timely direct appeal to the Louisiana Fourth Circuit challenging the trial court's admission of evidence of Campbell's murder.[6]  On February 12, 2012, the Louisiana Fourth Circuit affirmed the convictions and sentences finding that the trial court did not err in allowing the prosecution to introduce evidence of Campbell's murder, and, alternatively, any error in admitting the evidence was harmless.[7]

The Louisiana Supreme Court denied Jones's subsequent writ application without stated reasons on September 14, 2012.[8] Jones's conviction became final ninety (90) days later, on December 13, 2012, when the time expired for Jones to file a petition for writ of certiorari with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir.2003) (citing 28 U.S.C. § 2244(d)(1)(A); Flanagan v. Johnson, 154 F.3d 196, 200-01 (5th Cir.1998)); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir.1999) (citing 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup.Ct. R. 13(1).

On August 1, 2013, Jones submitted an application to the state trial court for post-conviction relief, asserting the following claims:[9]  (1) The trial court erred in allowing jurors to walk in and out of the courtroom in violation of sequestration.  (2) The trial

---

[6]St. Rec. Vol. 8 of 10, Appellant Brief, 2011-KA-0409, 7/21/11.

[7] State v. Jones, 83 So. 3d 224, 230-233 (La. App. 4th Cir. 2012); St. Rec. Vol. 8 of 10, 4th Cir. Opinion, 2011–KA–0409, 2/15/12.

[8]State v. Jones, 97 So. 3d 1014 (La. 2012); St. Rec. Vol. 10 of 10, La. S. Ct. Order,  2012-KO-0632, 9/14/12; La. S. Ct. Writ Application, 12 KO 632, 3/16/12 (dated 3/1/12).

[9]St. Record Vol. 1 of 10, Uniform Application for Post-Conviction Relief and Brief in Support, 8/1/13 (dated 8/1/13).

court improperly pressured the jury to reach a verdict after it advised that it "could not come together on a verdict tonight."  (3) The trial court denied him a fair trial and constructively denied him effective assistance of counsel when the trial court ordered trial counsel not to call a newly discovered witness to testify.  (4) The prosecutor committed misconduct by withholding evidence of an eyewitness until the middle of trial.  (5) The prosecutor committed misconduct during closing arguments by inferring that Kiefer had testified against defense counsel's previous client.  (6) The prosecutor committed misconduct during closing argument when he stated "to find him not guilty is the worst thing that could happen in the justice system."  (7) Ineffective assistance of counsel was provided in failing to investigate and/or request a continuance to secure the eyewitness withheld by the state or file a motion for new trial based on newly discovered evidence.  (8) Counsel provided ineffective assistance in stating in his opening statement that he would prove that Jones acted in self-defense and then failing to do so.  (9) Appellate counsel provided ineffective assistance in failing to assign as error the prosecutor's withholding of an eyewitness.

Jones sought an evidentiary hearing and appointment of counsel.[10]  On June 15, 2015, the state trial court denied the application, finding claims one through six and claim nine procedurally barred under La. Code Crim P. art. 930.4(c) for failure to assert

---

[10]St. Rec. Vol. 1 of 10, Motion Requesting Evidentiary Hearing on Post-Conviction Application and Appointment of Counsel, 8/1/13.

the claims on direct appeal and that petitioner failed to meet his burden of proof to establish ineffective assistance of counsel.[11]

On September 29, 2015, the Louisiana Fourth Circuit granted Jones's subsequent writ application for review and remanded for the state trial court to provide petitioner with an opportunity to explain why he failed to assert his seven defaulted claims on direct appeal.[12]

On remand, Jones filed a motion for appointment of counsel.[13]  On January 20, 2016, the state district court denied Jones's motion for appointment of counsel finding he was not entitled to counsel at that time because he had not explained his failure to raise his seven claims on appeal.[14]  In the meantime, Jones filed a responsive brief attributing his failure to assert the issues on direct appeal to ineffective assistance of trial counsel in failing to lodge contemporaneous objections to preserve the issues for appellate review, ineffective assistance of appellate counsel in failing to raise the issues on direct appeal, and his inability to assert the issues himself because he did not obtain

---

[11]St. Rec. Vol. 1 of 10, Trial Court Judgment, 6/15/15.

[12]St. Rec. Vol. 9 of 10, 4th Cir. Opinion, 2015-K-0795, 9/29/15; St. Rec. Vol. 9 of 10, 4th Cir. Writ Application, 2015-K-0795, 7/27/15 (dated 7/10/15).

[13]St. Rec. Vol. 1 of 10, Motion for Appointment of Counsel Pursuant to La. C. Cr. P. Art. 930.7B, 1/4/16 (dated 12/14/15).

[14]St. Rec. Vol. 1 of 10, Trial Court Order, 1/20/16.

a copy of the trial record until March 2013.[15]  The state filed its response claiming that Jones's claims of ineffective assistance of trial and appellate counsel were meritless and that the remaining claims were procedurally barred pursuant to La. Code Crim. P. art. 930.4.[16]  On April 1, 2016, the state district court sustained the State's procedural objections and denied relief as to the ineffective assistance of counsel claims.[17]  On June 30, 2016, the Louisiana Fourth Court of Appeal denied Jones's related writ application finding the trial court did not err in sustaining the State's procedural objections because petitioner failed to show a valid basis for not raising the errors on appeal and the trial court properly denied the ineffective assistance of counsel claims because Jones failed to show any resulting prejudice.[18]

On December 5, 2017, the Louisiana Supreme Court denied Jones's related writ application finding Jones failed to show he received ineffective assistance of counsel under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), he failed to satisfy his post-

---

[15]St. Rec. Vol. 1 of 10, Petitioner's Reason(s) for not Raising Claims on Direct Appeal with Incorporated Motion to Appoint Counsel Pursuant to La. C.Cr.P.Art.930.7, 1/22/16 (dated 1/8/16).

[16]State's Procedural Objections and Response on the Merits to Defendant's Application for Post-Conviction Relief, 2/26/16.

[17]St. Rec. Vol. 1 of 10, Trial Court Judgment, 4/1/16.

[18]St. Rec. Vol. 9 of 10, 4th Cir. Opinion, 2016-K-0538, 6/30/16; 4th Cir. Writ Application, 2016-K-0538(dated 4/29/16).

conviction burden of proof under La. Code Crim P. art. 930.2 and attached and incorporated the trial court's post-conviction order.[19]

## II.  FEDERAL HABEAS PETITION

On January 20, 2018, Jones filed his petition for federal habeas corpus relief in which he asserts the following grounds for relief:[20]  (1) He was denied his constitutional right to assistance of counsel at initial review collateral proceedings.  (2) His counsel provided ineffective assistance of counsel in failing to protect his rights against prosecutorial misconduct.  (3) The trial court constructively denied him assistance of counsel when it instructed defense counsel not to request a witness.

The State filed an answer in response to Jones's petition in which it concedes that the federal petition is timely.[21]  The State claims that Jones's claim that he was denied counsel on collateral review is non-cognizable on habeas review.  The State claims that Jones's third claim is procedurally barred and, alternatively, meritless.  It argues that Jones's remaining claim lacks merit and that the denial of relief by the state courts was not contrary to, or an unreasonable application of, federal law.

---

[19]State ex. rel Jones v. State, 231 So. 3d 33 (La. 2017) (per curiam); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 16-KH-1548, 12/5/17; La. S. Ct. Writ Application, 16 KH 1548, 8/12/16 (dated 7/27/16).

[20]Rec. Doc. No. 4.

[21]Rec. Doc. No. 21, at p. 4.

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[22] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Jones's petition, which, for reasons discussed below, is deemed filed in a federal court on January 20, 2018.[23]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

_____

[22]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk filed Jones's deficient petition on March 9, 2018.  The corrected petition was entered April 9, 2018 after petitioner requested pauper status.  Jones's signature on the original petition is dated January 20, 2018, which is the earliest date appearing in the record on which he could have submitted his pleadings to prison officials for mailing to a federal court.

The State concedes that Jones's petition was timely and that he exhausted state court review of his claims. However, as asserted by the State, Jones's claim that the trial judge denied him a fair trial and constructively denied him counsel when it instructed defense counsel not to request a witness is in procedural default and should be dismissed for the following reasons.

## IV.    PROCEDURAL DEFAULT

In his federal habeas petition, Jones asserts that the state trial judge denied him a fair trial and constructively denied him counsel when it instructed defense counsel not to request a witness testify at trial or refer to her. Jones asserted this claim in his application for post-conviction relief and the state trial court found it procedurally barred because he inexcusably failed to assert the claim on direct appeal.[24] The Louisiana Supreme Court adopted the state trial court's reasons for denying relief.[25]

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. Coleman, 501 U.S. at 731–32; Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).

---

[24]St. Rec. Vol. 1 of 10, Uniform Application for Post-Conviction Relief and Brief in Support, 7/23/15 (dated 7/17/15); Trial Court Judgment, 4/1/16.

[25]State ex. rel Jones v. State, 231 So. 3d 33 (La. 2017) (per curiam); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 16-KH-1548, 12/5/17.

This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  However, the "State need not explicitly apply [a] procedural bar 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred [under state law].'"  Beazley, 242 F.3d at 264 (quoting Coleman, 501 U.S. at 735 n.1). The procedural bars also prevail over any alternative discussion of the merits of the claim by a state court.  See Robinson v. Louisiana, 606 F. App'x 199, 204 (5th Cir. 2015) (citing Woodfox v. Cain, 609 F.3d 774, 796 (5th Cir. 2010)).  In this case, the procedural rule bar review of Jones's federal habeas claim.

A.    INDEPENDENT AND ADEQUATE

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Amos, 61 F.3d at 338.  The United States

Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).

To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. Walker v. Martin, 562 U.S. 307, 316 (2011); Glover, 128 F.3d at 902. A state procedural rule "can be 'firmly established' and 'regularly followed,'—even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." Beard v. Kindler, 558 U.S. 53, 60–61 (2009) (citation omitted). The question of the adequacy of a state procedural bar is itself a federal question. Beard, 558 U.S. at 60 (citing Lee v. Kemna, 534 U.S. 362, 375 (2002)).

The last reasoned decision on this issue was the judgment of the Louisiana Supreme Court which adopted the reasons of the state trial court. In its April 1, 2016 judgment finding review of this claim procedurally barred, the trial court implicitly relied upon article 930.4(C) of the Louisiana Code of Criminal Procedure, which provides that claims made in an application for post-conviction relief may be rejected if they could have been raised on appeal but were not. Under the circumstances of this case, the provisions of Article 930.4(C) is independent and adequate to bar federal review of this claim. Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is an independent and adequate state procedural rule); Johnson v. Cain, No. 12-0621, 2012 WL 5363327,

17

at *4 (E.D. La. Oct. 30, 2012) (Lemelle, J.) (Article 930.4(C)); <u>Perez v. Cain</u>, No. 12-1331, 2012 WL 4815611, at *1 (E.D. La. Oct. 10, 2012) (Barbier, J.) (Article 930.4(C)); <u>Thomas v. Cain</u>, No. 11-2103, 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) (Lemelle, J.) (Article 930.4(B)); <u>Simmons v. Cain</u>, No. 06-2130, 2008 WL 2185422, at *6 (E.D. La. May 20, 2008) (Berrigan, J.) (Article 930.4(B) and (C)); <u>Washington v. Cain</u>, No. 98-0584, 2000 WL 863980 (E.D. La. June 27, 2000) (Duplantier, J.) (Article 930.4(B)); <u>see also</u>, <u>Harris</u>, 489 U.S. at 263; <u>Glover</u>, 128 F.3d at 902.

The state courts' rulings, therefore, were based on Louisiana law setting forth the procedural requirements for preservation and presentation of claims for appellate review. <u>See</u> <u>Fisher</u>, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the issue). The state courts' reasons for dismissal of Jones's claim that the trial court denied him a right to a fair trial and constructively denied him counsel when it instructed defense counsel not to request a witness were therefore independent of federal law and adequate to bar review of his claim in this court.

B.    <u>CAUSE AND PREJUDICE</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." <u>Fisher</u>, 169 F.3d at 301 (citing <u>Coleman</u>, 501 U.S. at 748–50);

Amos, 61 F.3d at 338–39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. Id. at 486.

Jones appears to attribute the procedural default of his claim to his appellate counsel's failure to assert the issue on direct appeal. Ineffective assistance of counsel may in some circumstances serve as cause to overcome a procedural bar. See Murray, 477 U.S. at 489 (where ineffective assistance claim has independently been presented to state courts, it may be used to establish cause for a procedural default)." However, as will be discussed later in this report, Jones's claim of ineffective assistance of appellate counsel is without merit and does not constitute cause for his default. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).

Jones also claims that he did not have an opportunity to review the trial record or file a supplemental brief on direct appeal. It is well settled, however, that neither pro se status nor ignorance of the law is sufficient cause to excuse a procedural default. See Saahir v. Collins, 956 F.2d 115, 118 (5th Cir. 1992). My review of the record does not

support a finding that any factor external to the defense prevented Jones from presenting his claim in a procedurally proper manner.  The record does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir.1997) (citing Engle, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed. Ratcliff v. Estelle, 597 F.2d 474 (5th Cir.1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681–82 (5th Cir.1977)).

## C.   FUNDAMENTAL MISCARRIAGE OF JUSTICE

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex.1997) (footnote omitted); see Nobles, 127 F.3d at 423 n.33 (actual innocence factor requires a

20

showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Jones has failed to offer any basis for this court to consider his defaulted claim. Jones presents no clear and convincing evidence that suggests his actual innocence on the underlying convictions. Jones has failed to overcome the procedural bar to his claim, and the foregoing claim, both actually and technically exhausted, must be dismissed with prejudice as procedurally barred.

## V.    STANDARDS OF MERIT REVIEW

### A.    CLAIMS ADDRESSED ON THE MERITS BY THE STATE COURTS

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also

codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision " 'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]' " Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Hill, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established

rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted)  White v. Woodall, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011)), and Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

B.    CLAIMS NOT ADDRESSED ON THE MERITS BY THE STATE COURTS

The AEDPA's deferential standard of review under Section 2254(d) and Williams, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d).  To the extent Jones's ineffective assistance of counsel claims present issues not addressed by the state courts, this court utilizes a different standard of review. With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply.  Cullen v. Pinholster, 563 U.S. 170, 185-86 (2011); Henderson v. Cockrell, 333 F.3d 592, 597 (5th Cir. 2003).  Instead, the federal courts review those claims under pre-AEDPA de novo standards of review.  Id. at 598 (citing Jones v. Jones, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); Carty v. Thaler, 583 F.3d 244, 253 (5th Cir. 2009).  Thus, I will also consider Jones's claims de novo when necessary.

VI.     MARTINEZ: APPOINTMENT OF COUNSEL (CLAIM NO. 1)

Jones repeatedly suggests that he is entitled to relief and substantive review of his claims because the state courts did not provide him with assistance of counsel to develop his claims further.  He relies on the United States Supreme Court's decision in Martinez v. Ryan, 566 U.S.1 (2012), to support his argument.  Contrary to his assertions, however, Martinez does not require state courts to appoint counsel to provide further development of a petitioner's post-conviction claims.

On the contrary, Martinez reiterated the long-standing holding in Coleman v. Thompson, 501 U.S. 722, 752 (1991), that petitioners have no constitutional right to counsel on post-conviction review and that deficient performance by post-conviction counsel does not excuse procedural default. Martinez only created a narrow exception to that general rule that a state imposed procedural bar to review "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" Trevino v. Thaler, 569 U.S. 413, __, 133 S. Ct. 1911, 1914 (2013) (quoting Martinez, 566 U.S. at 17). The record before me reflects no state court imposed procedural bar to review of Jones's claims of ineffective assistance of counsel. No part of the Martinez holding applies to Jones's case or required that he be provided with post-conviction assistance of counsel in the state courts or this federal court to develop his claims further. He is not entitled to relief of this kind.

VII.    EFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 2)

Jones generally alleges that he received ineffective assistance of counsel at trial in violation of the Sixth and Fourteenth Amendment rights when his trial counsel failed to "protect his rights against Prosecutorial Misconduct."[26] He does not, however, identify any specific prosecutorial misconduct that counsel should have addressed and his brief does not explain this ineffective assistance of counsel claim. In his application for post-

---

[26]Rec. Doc. No. 4, p. 30.

conviction relief, he complained of the state's alleged late disclosure of a witness and claimed that his counsel rendered ineffective assistance of counsel in failing to investigate the witness, request a continuance of trial to secure the witness and file a motion for new trial based on newly discovered evidence.[27]  As cause for his procedural default, Jones claims ineffective assistance of appellate counsel for failing to appeal the trial court's alleged prevention of counsel from referring to or subpoenaing the witness.

The state trial court did not specifically address the issues relating to trial counsel's failure to subpoena the witness, request a continuance or file a motion for new trial in its judgment denying petitioner's ineffective assistance of counsel claims.[28]  In addressing appellate counsel's failure to brief the issue relating to the witness, the trial court found that Jones had not met his burden to establish entitlement to relief.[29]  The Louisiana Supreme Court denied relief, applying Strickland v. Washington, 466 U.S. 668 (1984), and attached the trial court's written reasons for denying the application.[30]

In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both

---

[27]St. Record Vol. 1 of 10, Uniform Application for Post-Conviction Relief and Brief in Support, 7/23/15 (dated 7/17/15).

[28]St. Rec. Vol. 1 of 10, Trial Court Judgment, 4/1/16.

[29]Id., at p. 6.

[30]State ex rel. Jones v. State, 231 So.3d 33 (La. 2017) (per curiam); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2016-KH-1548, 12/5/17.

deficient performance and resulting prejudice.  Id. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  Harrington, 562 U.S. at 105.  Harrington recognized

the high level of deference owed to a state court's findings under <u>Strickland</u> in light of

the AEDPA:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly
> deferential," and when the two apply in tandem, review is doubly so. The
> <u>Strickland</u> standard is a general one, so the range of reasonable applications
> is substantial. Federal habeas courts must guard against the danger of
> equating unreasonableness under <u>Strickland</u> with unreasonableness under
> § 2254(d). When § 2254(d) applies, the question is not whether counsel's
> actions were reasonable. The question is whether there is any reasonable
> argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u>, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential."

<u>Cullen</u>, 563 U.S. at 190 (quoting <u>Knowles</u>, 556 U.S. at 123). This court must therefore

apply the "strong presumption" that counsel's strategy and defense tactics fall "within

the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable

unless clearly proven otherwise by the petitioner. <u>Id.</u>, 466 U.S. at 689; <u>Geiger v. Cain</u>,

540 F.3d 303, 309 (5th Cir. 2008); <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999).

In assessing counsel's performance, a federal habeas court must make every effort to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time

of trial. <u>Strickland</u>, 466 U.S. at 689; <u>Neal</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227

F.3d 273, 282-83 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1167 (2001). Tactical decisions

when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox, 609 F.3d at 789. Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

A.    Failure to Investigate and Subpoena Witness to Testify

Jones alleges that the State advised the defense of a previously undisclosed witness during his trial. He claims that his trial counsel failed to investigate and call the witness to testify. He claims that the witness could have testified to facts demonstrating that he was not the aggressor in the incident that resulted in the murders.

During the cross-examination of Detective Barnes, the following exchange occurred[31]:

> Q.    But the ballistics evidence of the gun being in Alfred Jones' hand come from the guy you're protecting, Darryl Kiefer?
> A.    And there's another --
> Q.    I'm talking about admissible evidence, Detective. You know what that is.
> A.    Yes. And I think it was admissible because didn't the other guy testify to it?

---

[31]St. Rec. Vol. 7 of 10, Trial Transcript, pp. 44-45, 8/17/10.

The prosecutor objected and, at sidebar, advised the trial court that, while he did not know who Detective Barnes was referring to when she referred to "the other guy," he had "reason to believe there was an eight-year-old female who may have seen something" but that the child was medically unavailable.[32] The prosecution advised that the information regarding the witness was included in the police report.[33] The prosecution explained that the child had not been shown a line-up.[34] The trial court denied defense counsel's request that the jury be admonished, finding that Detective Barnes's testimony had not referenced the child.[35]

The trial court explained its belief that Darryl Kiefer was the "other guy" to whom Detective Barnes referred.[36] The following exchange then occurred[37]:

MR. TESSIER:
Well, then, I'm going to ask that question.
THE COURT:
Now, if you want to go out there, and she says some other witness, you ask that at your peril. Please understand that.
Because if she says, "There's some other witness that I spoke to," you open the door, not the State.
So I'm just telling you, don't look at me and say, "I want a mistrial," because I'm telling you, I don't know what her answer's going to be.

---

[32]Id., at pp. 48-49,51.

[33]Id., at p. 49.

[34]Id.

[35]Id., at pp. 50-51,54.

[36]Id., at pp. 54-55.

[37]Id., at pp. 55-57.

MR. TESSIER:

So she can throw out an answer, that there's somebody that she -

THE COURT:

I don't know the answer to the question, Rick, is what I'm trying to tell you.

Based on what she said thus far, I understand her only to be referring to Darryl Kiefer.

MR. TESSIER:

That's the only thing that's contained within the police report.

THE COURT:

Correct.

MR. TESSIER:

And the supplemental report, and the other.

THE COURT:

Correct.

MR. TESSIER:

So I can't rely on that.

THE COURT:

Correct.

MR. TESSIER:

And there have been no other ID's.

THE COURT:

Correct, which is why I asked the question. That's why I asked the question.

You all have been fighting so much, I don't know what this woman's going to say to you. I don't know.

I will rule on any motions that come out after she answers the question.

If you want to ask her, feel free to do so. I suspect that the answer that will probably come out of her mouth will probably be having to do with that other shooting. That's what I think her answer's going to be if you keep pushing her. That's what I think she's going to tell you.

Ultimately, defense counsel did not question Detective Barnes about the "other guy."[38]

_____

[38]Id., at pp. 58-59.

"'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" (emphasis added, citation omitted) Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011).  A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown.  Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").  To prevail on such a claim, petitioner must provide factual support showing what exculpatory evidence further investigation would have revealed.  Moawad, 143 F.3d at 948; Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

In addition, it is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)); Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008).  To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the

32

content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citing Bray, 265 F. App'x at 298). The Fifth Circuit has "clarified that the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'" Hooks v. Thaler, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting Woodfox, 609 F.3d at 808).

Jones has not met the foregoing requirements necessary to assert such a claim successfully. He presented no evidence to either the state courts or to this court, such as an affidavit from the witness showing that she was available and would have testified in a manner beneficial to the defense. While Jones claims that the child could have testified that he was not the aggressor, Barnes' investigative report indicates that investigators spoke with a child (Yasmin Brown), who stated only that she heard three or four shots, saw a long car in the area and thereafter locked the door to her residence.[39] The record also reflects that Brown was medically unavailable to appear at trial.[40]

Jones offers only self-serving, speculative and conclusory allegations that the proposed witness would have in fact testified and would have done so in a manner consistent with Jones's version of the facts. Therefore, petitioner failed to meet his burden of proof with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d

---

[39]St. Rec. Vol. 3 of 10, Police Investigative Report, p. 14 (undated).

[40]St. Rec. Vol. 7 of 10, Trial Transcript, pp. 48-49,8/17/10.

1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); <u>Buniff v. Cain</u>, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); <u>Anthony v. Cain</u>, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); <u>Combs v. United States</u>, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); <u>Harris v. Director</u>, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Jones has failed to establish any deficiency or prejudice arising from his counsel's failure to subpoena Brown. The denial of relief on this issue was not contrary to or an unreasonable application of <u>Strickland</u>.

B.    <u>Failure to Move for a Continuance</u>

Jones also faults his counsel's failure to move for a continuance. While he did not explain the purpose of requesting a continuance, Jones presumably believes one was necessary to procure Brown's testimony.

Initially, Louisiana law provides that a continuance shall not be granted after a trial has commenced; rather a recess (a temporary adjournment) of the trial is the only available remedy. La. Code Crim. art. 708. A motion for a recess is evaluated under the same standards as a motion for a continuance. State v. Williams, 22 So.3d 867, 889 (La. 2009); State v. Hodges, 749 So.2d 732, 739 (La. App. 4th Cir. 1999). A motion for a recess based on the absence of a witness must meet certain criteria, including a showing that the witness's testimony is material and her presence at trial is necessary, a probability that the witness will be available at the time to which trial is deferred and due diligence was used in an effort to procure the witness's attendance. La. Code Crim. P. art. 709.

Jones has not shown any basis for his counsel to have moved for a recess of trial. He fails to offer any evidence demonstrating a necessity for Brown's presence at trial or that her testimony would have been material. As previously explained, Brown merely stated that she heard shots and saw a vehicle. She was not shown a line-up and there is no evidence that she actually saw who committed the murders. There is no evidence that she would have testified differently. Jones offered no evidence demonstrating a probability that Brown would have been available to testify at a later date. Counsel is not

ineffective for failing to urge a baseless motion.  See Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections.").

Jones has failed to establish deficient performance or prejudice resulting from counsel's failure to move for a recess of trial.  Thus, the denial of relief by the state courts was not contrary to or an unreasonable application of Strickland and its progeny. He is not entitled to relief on this claim.

C.    Failure to File a Motion for New Trial

Jones asserts he was denied effective assistance of counsel because his counsel failed to file a motion for a new trial based on newly discovered evidence.  Jones claims that Brown's proposed testimony was newly discovered.

Louisiana law provides:

B.  The court, on motion of the defendant, shall grant a new trial whenever any of the following occur: ...
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.

36

La. Code Crim. P. art. 851(B)(3).  "A defendant seeking a new trial based on newly discovered evidence must establish four elements: (1) that the new evidence was discovered after trial; (2) that failure to discover the evidence before trial was not attributable to his lack of diligence; (3) that the evidence is material to the issues at trial; and (4) that the evidence is of such a nature that it would probably produce a different verdict in the event of retrial."  State v. Ward, 167 So.3d 592, 596 (La. 2015) (citing La. C. Cr. P. art. 851(B)(3) and State v. Cavalier, 701 So.2d 949, 951 (La. 1997)).

Jones has failed to demonstrate any basis for defense counsel to have filed such a motion.  Brown's identity and her statement made to police were not newly discovered evidence.  The police report, which was provided to defense counsel nearly three years before trial, included her statement.[41]  As explained above, Brown merely stated that she heard shots and saw a car.  There is no evidence that Brown actually witnessed the murders or that she could provide any exculpatory testimony  Without the basic required showing, there is no likelihood apparent from the record that the state trial court would have granted a motion for new trial based on newly discovered evidence.  Thus, his counsel did not cause prejudice to Jones when he failed to file a motion for a new trial when there was no legal basis to do so.  As previously explained, defense counsel is not

---

[41]St. Rec. Vol. 3 of 10, Police Report, p. 14 (undated); Disclosure of Evidence by the State, 6/22/07; State's Production of Discovery, 7/2/07; State's Inventory of Discovery, 11/19/07.

deficient for failing to file a baseless and unnecessary motion.  <u>Johnson</u>, 306 F.3d at 255;

<u>Smith</u>, 907 F.2d at 585 n.6; <u>Koch</u>, 907 F.2d at 527.

For these reasons, Jones has not met the burden of establishing either prong under

<u>Strickland</u>.  The denial of relief by the state courts was not contrary to or an unreasonable

application of <u>Strickland</u>.  Jones is not entitled to relief on this claim.

D.    <u>Failure of Appellate Counsel to Assert Issue on Appeal</u>

As cause for the procedural default of his third claim, Jones claims that his

appointed appellate counsel was ineffective in failing to argue on appeal the trial court's

instruction to defense counsel that Brown not be subpoenaed to testify or otherwise

referred to at trial.

Criminal defendants are entitled to effective assistance of counsel in their first

appeal of right.  <u>Evitts v. Lucey</u>, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821

(1985).  The <u>Strickland</u> standard for judging performance of counsel also applies to

claims of ineffective appellate counsel.  <u>Smith v. Robbins</u>, 528 U.S. 259, 285, 120 S.Ct.

746, 145 L.Ed.2d 756 (2000); <u>Goodwin v. Johnson</u>, 132 F.3d 162, 170 (5th Cir. 1997).

To prevail on a claim that appellate counsel was constitutionally ineffective, a petitioner

must show that his appellate counsel unreasonably failed to discover and assert a

nonfrivolous issue and establish a reasonable probability that he would have prevailed

on this issue on appeal but for his counsel's deficient representation.  <u>Briseno v. Cockrell</u>,

274 F.3d 204, 207 (5th Cir. 2001); <u>Smith</u>, 528 U.S. at 285-86, 120 S.Ct. 746.

Effective appellate counsel are not required to assert every nonfrivolous available ground for appeal. <u>Green</u>, 160 F.3d at 1043 (citing <u>Evitts</u>, 469 U.S. at 394, 105 S.Ct. 830). On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue <u>every</u> nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Appellate counsel has the discretion to exclude even a nonfrivolous issue if that issue was unlikely to prevail. <u>See</u> <u>Anderson v. Quarterman</u>, 204 F. App'x at ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit. As such, failure to raise these issues did not prejudice Anderson."); <u>Penson v. Ohio</u>, 488 U.S. 75, 83-84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); <u>Kossie v. Thaler</u>, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised). Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be found constitutionally ineffective for failure to raise every conceivable issue. <u>Smith</u>, 528 U.S. at 288, 120 S.Ct. 746; <u>Jones</u>, 463 U.S. at 754, 103 S. Ct. at 3308.

As discussed above, in conjunction with Jones's related claims of ineffective assistance of trial counsel, Brown's statement to investigators was not disclosed late, but in fact was included in the discovery provided to defense counsel years in advance of trial. The trial transcript demonstrates that the trial judge did not prevent defense counsel from calling Brown to testify or from questioning Detective Barnes about her. In fact, when defense counsel advised of his intent to ask Detective Barnes about Brown, the trial court stated, "If you want to ask her, feel free to do so."[42]  The trial court merely cautioned defense counsel about the perils of asking Barnes questions to which he did not know the answer and defense counsel apparently made a strategic decision not to question Barnes about the matter.[43]

Arguments that the trial court prevented defense counsel from calling Brown to testify or questioning Barnes about her statement would have wholly lacked merit, and counsel's failure to assert them on direct appeal cannot be deemed either deficient performance or prejudicial, since Jones has not demonstrated a reasonable probability that he would have prevailed on this issue.

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court law. Jones is not entitled to relief on this claim.

---

[42]St. Rec. Vol. 7 of 10, Trial Transcript, p. 57, 7/18/10.

[43]Id., at pp. 55-57.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Jones's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[44]

New Orleans, Louisiana, this _____15th_____ day of November, 2018.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[44]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.